**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

JOHN FREDERICK CONLEY

    Debtor

Case No. 3:17-bk-32877-SHB
Chapter 7

JOHN T. CURBOW

    Plaintiff

v.

JOHN FREDERICK CONLEY

    Defendant

Adv. No. 3:17-ap-03043-SHB

## **M E M O R A N D U M**

**APPEARANCES:**   AMBROSE, WILSON, GRIMM & DANIEL, PLLC
    Ronald L. Grimm, Esq.
    625 South Gay Street
    Suite 550
    Post Office Box 2466
    Knoxville, Tennessee  37901
    Attorneys for Plaintiff

    DOUGLAS L. DUNN, ESQ.
    706 Walnut Street
    Suite 402
    Knoxville, Tennessee 37902
    Attorneys for Defendant

**SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the question of whether summary judgment should be entered for Defendant for the reasons raised by the Court under Federal Rule of Civil Procedure 56(f)(2) and (3) based on the record submitted by the parties on Defendant's Motion for Summary Judgment that was denied on July 26, 2019.

## I.  PROCEDURAL POSTURE

Plaintiff filed the Complaint for Determination of Dischargeability Pursuant to Section 523 of the Bankruptcy Code ("Complaint") on December 22, 2017 [Doc. 1], commencing this adversary proceeding that seeks judgment against Defendant in the amount of $100,000.00 and a determination that the judgment is nondischargeable under 11 U.S.C. § 523(a)(2)(A).  In May 2019, Defendant filed a Motion for Summary Judgment ("Motion for Summary Judgment") [Doc. 39], supported by a brief, a statement of undisputed facts as required by E.D. Tenn. LBR 7056-1(a), deposition testimony of both Plaintiff and Defendant together with referenced exhibits, and an Affidavit of Defendant. [Docs. 40, 41.]  Plaintiff's response included purchase agreements executed by the parties and additional deposition testimony. [Docs. 46, 47, 48.] After Defendant filed a reply [Doc. 49], and the Court entered a Memorandum and Order Denying Defendant's Motion for Summary Judgment on July 26, 2019 ("Memorandum and Order") [Doc. 52].

In the Memorandum and Order, the Court set forth the undisputed facts established by the record or not disputed by the parties, provided the standard for summary judgment, outlined the requirement for a determination of nondischargeability under 11 U.S.C. § 523(a)(2)(A), and, pursuant to of Federal Rule of Civil Procedure 56(f)(2) and (3), stated that the § 523(a)(2)(A) issues are whether Defendant represented to Plaintiff that he would prepare and execute a promissory note but never intended to do so and, if so, whether Plaintiff reasonably relied on

2

such misrepresentation. [*Id*.] The Memorandum and Order directed Plaintiff to file a brief setting forth his argument (along with any statement of undisputed material facts with record citations) against a finding that the undisputed material facts establish that (A) Defendant did not make a material misrepresentation concerning his intent to prepare a promissory note and security agreement and (B) even if such a misrepresentation was made, Plaintiff's reliance on the representation was not justified, such that summary judgment against Plaintiff should be entered. The Court also provided Defendant with the opportunity to respond to Plaintiff's submissions.

Plaintiff filed his Brief and Statement of Additional Undisputed Facts on August 16, 2019 [Docs. 55, 56], and Defendant filed his responses to both documents on August 30, 2019, together with additional deposition testimony excerpts and discovery responses. [Docs. 57, 58].

Although summary judgment on claims involving the issue of fraudulent intent is very rare because intent is almost always an issue of fact, *see e.g., Mendelsohn v. Jacobowitz* (*In re Jacobs)*, 394 B.R. 646, 658 (Bankr. E.D.N.Y. 2008) (citing *Golden Budha Corp. v. Canadian Land Co. of Am.*, 931 F.2d 196, 201-02 (2d Cir. 1991)), in this case, after review of the entire record, including the supplemental documents filed by the parties as directed by the Memorandum and Order, the Court determines that Plaintiff cannot prove that Defendant materially misrepresented his intent to prepare a promissory note and security agreement thereby inducing Plaintiff to enter into the Agreements. Furthermore, the record makes clear that even if Defendant had misrepresented an intent to prepare a promissory note and security agreement, Plaintiff did not justifiably rely on any such representation nor was it the proximate cause of his losses. Accordingly, summary judgment will be granted in Defendant's favor, and the Complaint will be dismissed.

## II. UNDISPUTED FACTS[1]

The debt in question is owed by Defendant to Plaintiff under an Agreement for Stock Purchase and Sale of Central Communications and Electronics, Inc. executed by the parties on January 20, 2012, and a second Agreement for Stock Purchase and Sale of Central Communications and Electronics, Inc. executed on January 31, 2012 (collectively, "Agreements"). [Docs. 40 and 48 at ¶ 1; 40-1 at pp. 26, 31; 48-1; 48-2.] Defendant, who was a licensed attorney, prepared the first agreement in August or September 2011, and Plaintiff reviewed it briefly (i.e., for five minutes) before he approved it. [Docs. 40 and 48 at ¶¶ 7, 10.] Plaintiff did not hire Defendant as an attorney, nor did Plaintiff consider Defendant to be Plaintiff's attorney for preparation of the Agreements, and Defendant did not represent Plaintiff in the transaction. [Docs. 40 and 48 at ¶¶ 14-15.] Plaintiff chose not to have a lawyer review the Agreements "because he was anxious to conclude the deal and get out." [Docs. 40 and 48 at ¶ 15.]

The Agreements, which Defendant testified were taken from the internet, provide that "Buyer shall execute a promissory note setting forth the above terms [of payment] (attached as Exhibit 'A'), which shall be secured by a Security Interest on the assets of Central." [Docs. 48-1 at ¶ 2.02(c); 48-2 at ¶ 2.02(c).] Only Defendant would have executed a promissory note and security agreement, and neither party raised the issue concerning the lack of either document until after Defendant defaulted under the Agreements. [Docs. 56 at ¶¶ 4-5; 58 at ¶¶ 4-5.] Under the Agreements, Defendant purchased stock from Plaintiff for $250,000.00. [Docs. 40 and 48 at ¶ 3; 40-1 at p. 26 and 31; 48-1; 48-2.] To learn about the business before purchasing the stock,

---

[1] For clarity and completeness, the Court includes here the undisputed facts stated in the Memorandum and Order and the additional undisputed facts provided by the parties in response to the Court's directives in the Memorandum and Order.

Defendant, who informed Plaintiff that he wanted to change careers, worked for Plaintiff at Central Communications and Electronics, Inc. in 2011. [Docs. 40 and 48 at ¶¶ 6-7.]

Defendant filed a Voluntary Petition commencing his Chapter 7 bankruptcy case on September 18, 2017, approximately six months after Plaintiff had filed suit in state court for the unpaid balance of $100,000.00 owed under the Agreements. [Docs. 5 at ¶ 12; 13 at ¶ 12.] At the time the case was filed, Defendant owed $100,000.00 to Plaintiff under the Agreements. [Docs. 40 and 48 at ¶ 5.]

In addition, Plaintiff's Statement of Additional Undisputed Material Facts includes a number of facts that he claims are supported by the parties' deposition testimony and documents attached as exhibits to Plaintiff's brief that were included in the original summary judgment record; however, a number of those facts were disputed by Defendant in part because those portions of the parties' depositions were not entered into the record. [Docs. 56 and 58 at ¶¶ 2, 3, 6, 7-10.] Furthermore, even if the additional facts included in those paragraphs were supported by the record, they would not be determinative of Plaintiff's § 523(a)(2)(A) claim and do not provide evidence of intent, misrepresentation, justifiable reliance, or proximate cause sufficient to create a genuine issue of fact for trial.

### III.  ANALYSIS[2]

As stated in the Memorandum and Order, the Complaint seeks a determination that the $100,000.00 owed by Defendant to Plaintiff is nondischargeable under § 523(a)(2)(A), which requires Plaintiff to prove that Defendant obtained money or property from or belonging to Plaintiff through actual fraud, *see Husky Int'l Elecs., Inc. v. Ritz*, ___ U.S. ___, 136 S. Ct. 1581,

---

[2] Because the Court provided the standard for summary judgment in the Memorandum and Order and it would be unnecessarily repetitive to restate it, the Court incorporates herein by reference subsection II.A. of the Memorandum and Order [Doc. 52].

5

1586 (2016), or through a material misrepresentation that Defendant knew was false or was made with gross recklessness; that Defendant intended to deceive Plaintiff; that Plaintiff justifiably relied on Defendant's false representations; and that Plaintiff's reliance was the proximate cause of his losses. *See McDonald v. Morgan (In re Morgan)*, 415 B.R. 644, 649 (Bankr. E.D. Tenn. 2009). Although "a material misrepresentation can be defined as 'substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision[,] . . . '[a] misrepresentation is not material if the creditor knows it is false or "possesses information sufficient to call the representation into question."'" *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 761 (Bankr. E.D. Tenn. 2003) (quoting *Candland v. Ins. Co. of N. Am. (In re Candland)*, 90 F.3d 1466, 1470 (9th Cir. 1996); *In re Sheridan*, 57 F.3d 627, 635 (7th Cir. 1995) (quoting *Mayer v. Spanel Int'l Ltd. (In re Mayer)*, 51 F.3d 670, 676 (7th Cir. 1995))). Additionally, intent to deceive includes consideration of "whether the totality of the circumstances 'presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor.'" *Graham v. Graham (In re Graham)*, 600 B.R. 90, 95 (Bankr. D. Kan. 2019) (quotation omitted). Also "'a direct link [must exist] between the alleged fraud and the creation of the debt.'" *Copeland*, 291 B.R. at 767 (quoting *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 n.7 (1st Cir. 2001)).

Here, the totality of the circumstances created by the undisputed facts indicates that there was no material misrepresentation. Simply, Defendant's actions do not present a picture of conduct indicating that he intended to deceive Plaintiff or induce him into executing the Agreements. The Agreements did not include any requirement that Defendant *prepare* a promissory note or security agreement. [Docs. 40-2 at pp. 26-27 (¶¶ 2.02(c), 3.02(b), 3.03(b)), p. 31 (¶¶ 2.02(c), 3.02(b), 3.03(b)).] Plaintiff chose not to obtain representation concerning the

6

Agreements because "he was anxious to conclude the deal and get out" [Docs. 40 and 48 at ¶¶ 14-15], and he spent only five minutes[3] reviewing the first agreement before indicating his approval to Defendant [Docs. 40 and 48 at ¶ 10].  Plaintiff admits that he did not perceive Defendant to be his attorney and he did not hire Defendant to act as his attorney in the transaction. [Doc. 40-1 at p. 14, 19-22.]  Plaintiff also admitted in deposition testimony that he did not have any reason to think that Defendant did not enter into the Agreements in good faith "except the fact that he's failed to pay me." [Doc. 40-1 at p. 24.]  Moreover, when questioned during his deposition about what representations Defendant made to him that were false, Plaintiff's responded as follows:

> A:  He said he was going to pay me and he didn't.
>
> Q:  Okay.
>
> A:  That's basically it.
>
> Q:  Okay.
>
> . . . .
>
> Q:  All right.  You've mentioned several times and we talked about John being a lawyer.  What difference did it make whether he was a lawyer or an accountant or a businessman or a preacher or anybody else?
>
> A:  Well, it seems that, if you're going to prepare a contract, that to make sure that it has validity, it generally needs to be prepared by an attorney that understands the law.
>
> . . . .
>
> Q:  So what was the obligation for him to be watching out for your interest when he has interests in this same deal?
>
> A  Well, shame on me, but I thought he was an honorable and trustworthy man.

---

[3] Plaintiff did not dispute Defendant's statement that Plaintiff only took five minutes to read through the first agreement; however, in his deposition, Plaintiff stated that he took fifteen minutes to read through the agreement. [Doc. 40-1 at pp. 13-14.]

7

> Q: Well, did the terms here set forth what you agreed to?
>
> A: Yes.
>
> Q: Was there anything in this agreement, Exhibit 1 or Exhibit 2, that you didn't agree to?
>
> A: No.
>
> Q: He didn't try to slide something in there that you all hadn't talked about?
>
> A: No. The only thing he didn't do was pay me.
>
> Q: Okay. So that's the bottom line here is the payment did not get made in the installments, correct?
>
> A: Correct.

[Doc. 40-1 at pp. 15-17.]

Additionally, although eleven days passed between execution of the first and second agreements, Plaintiff did not ask for a promissory note during that time (and the only difference between the two agreements concerns tax liability). [*See* Doc. 40-1 at pp. 9-11.] The record also reflects that Plaintiff never asked Defendant about a promissory note either before or after the Agreements were executed, never saw a promissory note, and did not think it mattered that the promissory note was not attached to the Agreements. [Doc. 58-1.] Specifically, Plaintiff testified at deposition:

> Q: Did you ever ask [Defendant] about the reference to Exhibit A, about the promissory note?
>
> A: I didn't ask him. I presumed that he was going to give it to me.
>
> . . . .
>
> A: He was supposed to, but he didn't.
>
> . . . .
>
> Q: When you got that agreement, Exhibit 1, was there an Exhibit A attached to it?

8

A: No.

Q: Did you ever see an Exhibit A?

A: Not that I recall, no.

Q: Did you ask for an Exhibit A?

A: Not that I recall, no.

Q: When he made the payments under the agreement, at any time you received the payments, did you ask about Exhibit A?

A: No, not that I recall.

Q: After you signed Exhibit 1, do you recall any time where you ever asked him about Exhibit A or where it was or when it was?

A: Not that I recall, no.

Q: With regard to the second agreement that was executed, I think 11 days later, was there any Exhibit A attached there?

A: No.

Q: Did you ever ask about it?

A: Not that I recall.

Q: Did it matter to you whether Exhibit A was attached?

A: I didn't think it would, but obviously it does now.

Q: At any time prior to, I guess, prior to you filing litigation in state court, did the absence of Exhibit A ever matter?

A: No.

Q: And when I say Exhibit A, I think this references that as the promissory note. I would ask the same questions about the reference in that paragraph to a security agreement. Did it ever matter whether or not a security agreement existed?

A: Well, I thought that John would execute all of that and provide them, and I just didn't pursue it. I counted on him to provide that, since he was providing the documentation.

9

[Doc. 58-1 at pp. 1-2.]

Plaintiff argues that the terms of the Agreements place the onus on Defendant to act: "[b]uyer shall execute a promissory note setting forth the above terms (attached as Exhibit 'A')." [Doc. 55 at p. 3.] Plaintiff notes that "[a]t no point during the parties' transaction was the Plaintiff obligated to draft documents or procure counsel to aid in drafting documents necessary to the sale of Central." [*Id.*]  He then argues that "Defendant's misrepresentation implicitly derived from his act of providing the Agreement to Plaintiff for execution and failing to perform under the terms of the Agreement." [*Id.* at p. 5.]  He also states that Defendant's partial performance "in drafting the Agreement" led Plaintiff to "assume[] all business related to the transaction was in order." [*Id.*]  Plaintiff concludes:

> Consequently, Defendant's misrepresentation to Plaintiff was implicit because his procession with normal business activities represented to Plaintiff that all necessary steps had been taken to ensure the terms of the transaction had been fulfilled including the initial payments required to be made to Plaintiff according to the terms of the Agreement.

[*Id.*]  That Plaintiff was not "obligated to draft any documents or procure counsel to aid in drafting documents" [*id.* at p. 3] does not create any inference that Defendant promised or was obliged to prepare documents.

Moreover, Plaintiff's argument of an implicit misrepresentation that induced him to enter into the Agreements appears circular.  That is, Defendant's partial performance under the Agreements (by making initial payments), which obviously came after Plaintiff executed the Agreements, could not possibly have created an inducement for Plaintiff to execute the Agreements.  Nor does the sincerity of Plaintiff's belief, which Plaintiff asserts was impacted by the circumstances before and during the transaction [*id.* at pp. 5-6], create any inference of a misrepresentation by Defendant on which Plaintiff reasonably relied.

10

Based on the undisputed facts, the Court inescapably concludes that Plaintiff did not execute the Agreements in reliance on a representation by Defendant that he would prepare – or even execute – a promissory note. Additionally, as part of his response to Interrogatory No. 7 asking for all facts on which he relied to establish that Defendant did not intend to pay his debts, Plaintiff tied his § 523(a)(2)(A) claim to a misrepresentation that Defendant gave Plaintiff the false impression that Defendant was a licensed attorney (i.e., not a misrepresentation that Defendant would prepare a note and security agreement):

> Defendant's misrepresentations fostered a false impression that Defendant was a licensed attorney. Based on that misrepresentation Curbow reasonably relied upon Defendant to draft the Agreement and abide by all of its terms. Defendant testified at the § 341(a) meeting of creditors that he drafted the Agreement, knew he was required to draft the promissory note and security agreements, but never drafted them.

[Doc. 58-2.]

In sum, based on the record before this Court, Plaintiff is unable to prove that Defendant made any false representations upon which Plaintiff justifiably relied. Notwithstanding his interrogatory response quoted above, Plaintiff testified in his deposition that he knew that Defendant was not acting as his attorney or representing him concerning execution of the Agreements. Additionally, Plaintiff testified that he only briefly reviewed the initial agreement, and notwithstanding that eleven days passed between his execution of the two Agreements, he did not raise the issue of a promissory note and security agreement to Defendant. Nor did he ever ask for such documents after the Agreements were executed. Thus, although the undisputed facts do not establish Defendant's intentions concerning preparation of a promissory note or security agreement, such is irrelevant because (1) the record contains no evidence that Defendant ever represented that he would prepare such documents and (2) Plaintiff has presented no evidence that he justifiably relied on execution of a promissory note or security agreement in his

11

decision to execute the Agreements. These undisputed facts prevent Plaintiff from meeting his burden under § 523(a)(2)(A) so that summary judgment must be granted in favor of Defendant.

An Order consistent with this Memorandum will be entered.

FILED: February 5, 2020

                                        BY THE COURT

                                        *s/ Suzanne H. Bauknight*

                                        SUZANNE H. BAUKNIGHT
                                        UNITED STATES BANKRUPTCY JUDGE